OPINION
{¶ 1} Appellant Juanita Johnson-Millender appeals her conviction, for murder, in violation of R.C. 2903.02(B). The following facts give rise to this appeal.
 {¶ 2} On January 28, 2004, appellant's infant son, Joshua Rumph, died under a blanket, in his crib. Joshua's diaper, sleeper and t-shirt were soaked in urine and feces. Joshua's crib was surrounded by five empty baby bottles and one bottle filled with a liquid consisting of two percent milk diluted with water. Further, Joshua suffered from such a severe case of diaper rash that his skin was peeling from his body. Also, the hair on the back of Joshua's head was thin from laying on his back for many hours.
 {¶ 3} Prior to his death, on April 14, 2003, Joshua weighed sixteen pounds and seven ounces. Eleven months later, at the time of his death, Joshua weighed ten pounds and four ounces. Following an autopsy, the coroner ruled the cause of Joshua's death was extremely severe malnutrition known as "marasmus."
 {¶ 4} On the date in question, John Breehl, a Canton City firefighter, found Joshua's body in response to a 9-1-1 call that a child was not breathing. Upon arriving at appellant's apartment, Breehl found appellant, Mary Hall and Rachel Everett sitting on a couch in the living room. Breehl asked the women where the baby was and they directed him to the back bedroom where he discovered Joshua. Breehl checked for vital signs and found none. Breehl also noticed that Joshua was cold to his touch.
 {¶ 5} Detectives from the Canton Police Department immediately began an investigation into Joshua's death. They learned that around 2:00 p.m. that afternoon, appellant knocked on the door of her neighbor, Rachel Everett. Appellant told Everett that she had something to tell her, but first she wanted to get cigarettes and "milds" before doing so. Everett took appellant to the Hill's store. Thereafter, appellant told Everett that Joshua "had passed" and took her into the apartment. Everett observed Joshua with a blanket over him. Upon seeing Joshua in his crib, Everett became upset and left appellant's apartment to visit her boyfriend at the Stark County Jail.
 {¶ 6} After visiting the jail, Everett returned to appellant's apartment and told her that she had to tell someone because she did not want to get in trouble. Appellant replied that she did not want to tell anyone because she was "scared." Everett called her grandmother, Mary Hall, and asked her to come to appellant's apartment. Hall arrived at appellant's apartment at approximately 4:00 p.m. At this point, Everett was hysterical. Hall went into the bedroom, pulled back the blanket covering Joshua and found him dead. Appellant told Hall that she found Joshua dead the night before when she tried to put a bottle of milk in his mouth.
 {¶ 7} Appellant attempted to prevent Hall from calling 9-1-1, however, Hall called for emergency help. At the police department, appellant told Detective Lawver that she discovered Joshua dead at about 11:30 p.m. on January 27, when she was trying to give him a bottle. Appellant informed Detective Lawver that she stopped feeding Joshua table foods because he would vomit and she was tired of "cleaning up throw up." Appellant further indicated that the last day she fed Joshua was New Year's day.
 {¶ 8} On March 12, 2004, the Stark County Grand Jury indicted appellant on one count of aggravated murder, pursuant to R.C. 2903.01(C), with a death penalty specification. The death penalty specification alleged that appellant purposefully caused the death of her son, Joshua Rumph, who was under the age of thirteen years and that she was the principal offender in the commission of the offense. Appellant entered a plea of not guilty. Prior to trial, appellant indicated that she wished to waive her right to a jury trial. Following a hearing, the trial court granted appellant's request and a three-judge panel was selected to hear this matter.
 {¶ 9} Appellant's trial commenced on August 23, 2004. At the conclusion of the state's case-in-chief, appellant moved for acquittal pursuant to Crim.R. 29(A). The trial court denied appellant's motion and thereafter, indicated its intent to consider the offense of murder as a lesser-included offense to the charge of aggravated murder. At the conclusion of the trial, the court considered the following three charges: aggravated murder with a death penalty specification; murder pursuant to R.C. 2903.02(B); and involuntary manslaughter pursuant to R.C. 2903.04(A).
 {¶ 10} Following its deliberations, the trial court found appellant guilty of murder pursuant to R.C. 2903.02(B). In doing so, the trial court stated that the offense of violence committed by appellant, for a conviction under R.C. 2903.02(B), was child endangering. The court sentenced appellant to fifteen years to life in prison. Appellant timely filed a notice of appeal and sets forth the following assignments of error for our consideration:
 {¶ 11} "I. THE TRIAL COURT COMMITTED PLAIN ERROR IN CONSIDERING MURDER UNDER O.R.C. § 2903.02(B) TO BE A LESSER-INCLUDED OFFENSE OF THE CRIME OF AGGRAVATED MURDER AND CONVICTING THE APPELLANT OF SAME.
 {¶ 12} "II. THE APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF TRIAL COUNSEL AS CONSTITUTIONALLY GUARANTEED WHEN TRIAL COUNSEL FAILED TO OBJECT TO TRIAL COURT'S CONSIDERATION OF A LESSER CHARGE WHICH WAS NOT A LESSER-INCLUDED OFFENSE.
 {¶ 13} "III. THE VERDICT OF THE TRIAL COURT FINDING THE APPELLANT GUILTY OF MURDER BY REASON OF THE COMMISSION OF ABUSE WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."
 I {¶ 14} In her First Assignment of Error, appellant contends the murder charge, under which the trial court convicted her, is not a lesser-included offense of the aggravated murder charge contained in the indictment. We disagree.
 {¶ 15} Prior to addressing the merits of appellant's argument, we note that defense counsel did not object to the trial court's decision to consider R.C. 2903.02(B) during its deliberations. Therefore, we must review this assignment of error, under a plain error analysis, pursuant to Crim.R. 52(B). This rule provides that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Notice of plain error is to be taken with the utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice. State v. Long (1978),53 Ohio St.2d 91, paragraph three of the syllabus; State v. Cooperrider
(1983), 4 Ohio St.3d 226, 227.
 {¶ 16} The issue raised in this assignment of error is whether the offense of murder, as defined in R.C. 2903.02(B), is a lesser-included offense of aggravated murder, as defined in R.C. 2903.01(C). A defendant may be convicted of a lesser-included offense if found not guilty of the charged offense. See R.C. 2945.74 and Crim.R. 31(C). In addressing this issue, appellant relies upon the case of State v. Wilkins (1980),64 Ohio St.2d 382, which sets forth a three-part test for determining which offenses are lesser-included offense of a charged criminal offense.
 {¶ 17} In State v. Deem (1988), 40 Ohio St.3d 205, a more recent decision from the Ohio Supreme Court, the Court once again discussed the three-part test. The Court stated as follows:
 {¶ 18} "An offense may be a lesser included offense of another if (i) the offense carries a lesser penalty than the other; (ii) the greater offense cannot as, statutorily defined, ever be committed without the lesser offense, as statutorily defined, also being committed; and (iii) some element of the greater offense is not required to prove the commission of the lesser offense." Deem at paragraph three of the syllabus.[1]
 {¶ 19} For purposes of addressing this assignment of error, we will apply the Deem analysis. Appellant maintains the second and third prongs of the Deem test are not satisfied because aggravated murder and murder have mutually exclusive elements. Therefore, according to appellant, murder, under R.C. 2903.02(B), is not a lesser-included offense of aggravated murder, under R.C. 2903.01(C).
 {¶ 20} The grand jury indicted appellant under R.C. 2903.01(C) which provides that "[n]o person shall purposely cause the death of another who is under thirteen years of age at the time of the commission of the offense." The three-judge panel found appellant guilty of murder, under R.C. 2903.02(B), which provides that "[n]o person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree and that is not a violation of section 2903.03 or 2903.04
of the Revised Code."
 {¶ 21} Specifically, appellant argues one could prove murder, under R.C. 2903.02(B), by showing that the offender committed an offense of violence, of the first or second degree, without proving the purpose on the part of the offense necessary for an aggravated murder conviction under R.C. 2903.01(C). Likewise, appellant further argues one could prove the aggravated murder elements, under R.C. 2903.01(C), (i.e. the purpose and age of the victim) without proving the elements of murder under R.C.2903.02(B).
 {¶ 22} We disagree with appellant's arguments upon application of theDeem analysis. First, the offense of felony murder, under R.C.2903.02(B)(2), carries a lesser penalty than the offense of aggravated murder under R.C. 2903.01(C). Second, aggravated murder of a person under thirteen years of age cannot ever be committed without also committing felony murder, with a predicate offense of child endangering. Aggravated murder, under R.C. 2903.01(C), requires a purposeful act to cause the death of a person under the age of thirteen.
 {¶ 23} However, felony murder, with the predicate offense of child endangering, under R.C. 2903.02(B), does not require a specific intent to kill but specifies that the death also be linked, as a proximate result of committing an offense of violence, that is a felony of the first or second degree, such as child endangering.
 {¶ 24} Finally, two elements of the greater offense are not required to prove the lesser offense. Under aggravated murder, pursuant to R.C.2903.01(C), the element of a specific purpose to kill must be established, which is not required to prove murder under R.C. 2903.02(B). Further, in order to establish aggravated murder under R.C. 2903.01(C), the victim must be younger than thirteen years of age, which is not required to establish murder under R.C. 2903.02(B).
 {¶ 25} Accordingly, the trial court did not commit plain err when it found appellant guilty of murder, under R.C. 2903.02(B), since it is a lesser-included offense of aggravated murder under R.C. 2903.01(C).
 {¶ 26} Appellant's First Assignment of Error is overruled.
 II {¶ 27} In her Second Assignment of Error, appellant maintains she was denied effective assistance of counsel because defense counsel failed to object to the trial court's consideration of murder under R.C. 2903.02(B). We disagree.
 {¶ 28} A claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry is whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. Strickland v. Washington (1984), 466 U.S. 668;State v. Bradley (1989), 42 Ohio St.3d 136.
 {¶ 29} In determining whether counsel's representation fell below an objective standard of reasonableness, judicial scrutiny of counsel's performance must be highly deferential. Bradley at 142. Because of the difficulties inherent in determining whether effective assistance of counsel was rendered in any give case, a strong presumption exists counsel's conduct fell within the wide range of reasonable, professional assistance. Id.
 {¶ 30} In order to warrant a reversal, the appellant must additionally show he was prejudiced by counsel's ineffectiveness. "Prejudice from defective representation sufficient to justify reversal of a conviction exists only where the result of the trial was unreliable or the proceeding fundamentally unfair because of the performance of trial counsel." State v. Carter (1995), 72 Ohio St.3d 545, 558, citing Lockhartv. Fretwell (1993), 506 U.S. 364, 370.
 {¶ 31} Having determined that murder, under R.C. 2903.02(B), is a lesser-included offense of aggravated murder, under R.C. 2903.01(C), we conclude this assignment of error lacks merit because defense counsel had no duty to object to the three-judge panel's consideration of murder under R.C. 2903.02(B).
 {¶ 32} Appellant's Second Assignment of Error is overruled.
 III {¶ 33} Appellant contends, in her Third Assignment of Error, the trial court's verdict finding her guilty of murder by reason of the commission of abuse was against the manifest weight and sufficiency of the evidence. We disagree.
 {¶ 34} The three-judge panel, in the case sub judice, found appellant guilty of murder under R.C. 2903.02(B), with the predicate offense of violence being child endangering. For a conviction under R.C. 2903.02(B), the predicate offense must be a felony of the first or second degree. R.C. 2919.22 sets forth the elements of child endangering and provides, in pertinent part, as follows:
 {¶ 35} "(A) No person, who is the parent, * * * of a child under eighteen years of age * * *, shall create a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support. * * *
 {¶ 36} "(B) No person shall do any of the following to a child under eighteen years of age * * *:
 {¶ 37} "(1) Abuse the child;
 " * * * {¶ 38} "(E)(1) Whoever violates this section is guilty of endangering children.
 {¶ 39} "(2) If the offender violates division (A) or (B)(1) of this section, endangering children is one of the following:
 " * * * {¶ 40} "(c) If the violation is a violation of division (A) of this section and results in serious physical harm to the child involved, a felony of the third degree.
 {¶ 41} "(d) If the violation is a violation of division (B)(1) of this section and results in serious physical harm to the child involved, a felony of the second degree."
 {¶ 42} Appellant contends the starvation of a child is not abuse, under R.C. 2919.22(B)(1), and instead, is an offense punishable under R.C. 2919.22(A), which is a third degree felony. Thus, appellant concludes that since she did not commit a first or second degree felony, which is required for a murder conviction under R.C. 2903.02(B), her conviction is against the manifest weight and sufficiency of the evidence.
 {¶ 43} On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. State v. Jenks (1991), 61 Ohio St.3d 259. On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Martin (1983), 20 Ohio App.3d 172,175. See also, State v. Thompkins (1997), 78 Ohio St.3d 380. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 175.
 {¶ 44} In State v. Snell, Stark App. No. 2002CA00181, 2003-Ohio-975, this court addressed the definition of child abuse and approved the following definition adopted by the trial court from R.C. 2151.031(D):
 {¶ 45} "* * * [a]buse means any act which causes physical or mental injury, that harms or threatens to harm the child's health or welfare." Id. at ¶ 25.
 {¶ 46} Appellant suggests that she merely failed to act in not taking care of her seventeen-month old son, thereby causing the death of her child We disagree with this argument and find that appellant's conduct was not merely a failure to act, but instead an act of abuse. Appellant admitted that she made a conscious decision to withhold food from her son for a period of twenty-seven days. Appellant made this decision because she was tired of cleaning up vomit. Further, appellant sought no medical attention for her son even though she had done so in the past.
 {¶ 47} Clearly, appellant's conduct caused physical injury to her son that resulted in his death. We find such conduct constituted abuse under the child endangering statute. Accordingly, the trial court's decision finding appellant guilty of murder, under R.C. 2903.02(B), is not against the manifest weight and sufficiency of the evidence.
 {¶ 48} Appellant's Third Assignment of Error is overruled.
 {¶ 49} For the foregoing reasons, the judgment of the Court of Common Pleas, Stark County, Ohio, is hereby affirmed.
Wise, J., Boggins, P.J., and Gwin, J., concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Stark County, Ohio, is affirmed.
[1] Only the first prong of the three-part test differs between theWilkins and Deem decisions. The first prong of Wilkins requires a court to consider whether the offense is a crime of a lesser degree than the other. Whereas, the first prong of Deem requires a court to consider whether the offense carries a lesser penalty than the other.